UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

D.M., a minor, by Bao Xiong,            Civ. No. 18-2140 (PAM/SER)
the mother, legal guardian, and
next friend of D.M; and Z.G.,
a minor, by Joel Greenwald,
the father, legal guardian, and
next friend of Z.G.,

                               Plaintiffs,

v.                                              **MEMORANDUM AND ORDER**

Minnesota State High School
League; Erich Martens, in his
official capacity as Executive
Director of the Minnesota State
High School League; Craig Perry,
in his official capacity as an
Associate Director of the Minnesota
State High School League; Bob
Madison, in his official capacity as
an Associate Director of the Minnesota
State High School League; and Bonnie
Spohn-Schmaltz, in her official capacity
as President of the Board of Directors
for the Minnesota State High School League,

                               Defendants.

---

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction. For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiffs D.M. and Z.G. challenge a Minnesota State High School League ("MSHSL") rule that dance team is a girls-only sport. They contend that this rule violates

both Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and their rights under the Equal Protection Clause of the United States Constitution. They seek a preliminary injunction prohibiting the MSHSL from enforcing the girls-only dance team rule. The injunction would allow them to participate in their schools' dance team's competitive season, which begins in October.

D.M is a junior at Roseville High School. (Compl. (Docket No. 1) ¶ 6.) He joined his school's recreational dance team more than a year ago. (Xiong Aff. (Docket No. 14) ¶¶ 6-7.) When he sought to join the school's competitive dance team, however, he was told that he could not because of the MSHSL rule that only girls may participate in competitive dance team events. (Id. ¶ 8.) D.M. is the student manager for the team and travels with the team to competitions, even though he is not allowed to compete. (Id. ¶ 10; Compl. ¶ 27.)

Z.G. is a junior at Hopkins High School. (Compl. ¶ 8.) He has taken dance classes for years, and in those classes dances with members of the high school's dance team. (Id. ¶¶ 18, 32.) He inquired about joining the team but was told that he could not because of the rule that only girls are allowed. (Id. ¶ 31.)

Plaintiffs allege that the MSHSL girls-only rule violates their equal protection rights as well as their rights under Title IX. They seek an injunction "prohibiting Defendants . . . from enforcing the Minnesota State High School League (MSHSL) rule that prohibits boys from participating in high school competitive dance team while this case is pending." (Mot. (Docket No. 11.) at 1.) The competitive season for dance team begins in October.

2

**DISCUSSION**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). When deciding whether to issue a preliminary injunction, courts consider four factors: (1) the threat of irreparable harm to the movant; (2) the balance of harm the injunction would have on the movant and the opposing party; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

**A.     Likelihood of Success on the Merits**

Although the parties do not address the proper standard for this prong of the Dataphase test, there is some question whether Dataphase's "probability" of success means a "fair chance," or somewhat less than a 50% chance of success, or whether it means a "likelihood," or somewhat more than a 50% chance of success. See Planned Parenthood of Minn., N. Dak., S. Dak. v. Rounds, 530 F3d 724, 730-31 (8th Cir. 2008) (discussing different standards under "probability of success" factor). But a party seeking to enjoin "government action based on presumptively reasoned democratic processes" "must demonstrate more than just a 'fair chance' that it will succeed on the merits." Id. at 731-32. Rather, the party must demonstrate that it is likely to prevail on the merits of its claims. Id. at 732. Here, as discussed below, even if MSHSL policies do not rise to the level of a government action, the challenged policy is supported by a Minnesota statute, and thus the more stringent "likelihood of success" standard applies.

1. **Equal Protection**

Claims that a governmental entity is discriminating on the basis of sex are evaluated under an intermediate-scrutiny standard. Under this standard, a classification "must be substantially related to an important governmental objective." Clark v. Jeter, 486 U.S. 456, 461 (1988). The League contends that girls-only sports teams, like the dance teams at issue here, further the important governmental objective of remedying the past and present effects of gender underrepresentation in interscholastic athletics in Minnesota.

Although Plaintiffs disavow any constitutional challenge to Minnesota law, there is a statutory basis for girls-only teams in Minnesota. Specifically, Minnesota law provides that "it is not an unfair discriminatory practice to restrict membership on an athletic team to participants of one sex whose overall athletic opportunities have previously been limited." Minn. Stat. § 121A.04, subd. 3(a). Of course, the state legislature cannot authorize public schools to violate the Equal Protection Clause, but this statute is evidence of the important governmental objective here.

Plaintiffs contend that current participation differentials between boys and girls do not support the maintenance of girls-only teams. But there is sufficient evidence to support a determination that girls continue to be underrepresented in athletics in Minnesota's high schools. And merely because newer data shows a recent narrowing of the gap does not mean that the gap has closed or is imminently likely to close. Moreover, the governmental objective is to give girls more chances to participate, because their "opportunities have previously been limited." "Previously" in this context could mean last year or five, ten, or twenty years ago. Opening up a girls-only team to boys will not increase girls'

participation, and thus it will not further the objective of increasing girls' athletic opportunities.

The girls-only dance team rule is substantially related to an important governmental objective, and Plaintiffs are not likely to succeed on the merits of their Equal Protection claim.

## 2. Title IX

Plaintiffs assert that dance team is not a sport but rather is an extracurricular activity, which is subject to stringent regulations under Title IX. A school may have a single-sex extracurricular activity only if the single-sex limitation is "substantially related to achieving" either the objective of "improved educational achievement" through "diverse educational opportunities" or the objective of "meet[ing] the particular, identified educational needs of its students." 34 C.F.R. § 106.34(b)(1)(i).

But the MSHSL has established that dance team is a sport, not an extracurricular activity. MSHSL has the authority to decide what is and is not a sport in Minnesota high-school athletics, and it approved girls' dance team as an interscholastic sport in 1996. (Martens Decl. ¶ 27.) There is no reason or indeed any authority for questioning this decision 22 years later. Dance teams are usually administered by a high school's athletic department, and participants are chosen based on athletic ability. (Id. Ex. D.) There are rules for dance team competitions, standards for competitors, and the MSHSL hosts a competitive state tournament to crown a state champion each year. Competitive dance team bears all of the hallmarks of an interscholastic sport.

As a sport, dance team is subject to an exception to Title IX's general rule that "[n]o person shall, on the basis of sex, be excluded from participation in. . . any interscholastic . . . athletics." 34 C.F.R. § 106.41(a). This exception provides that schools "may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." Id. § 106.41(b). In addition, if a school

> operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport.

Id.

In November 2017, Plaintiffs' lawyers filed a complaint against the MSHSL with the Department of Justice's Office of Civil Rights ("OCR") on behalf of a different individual, asserting that the restriction on boys' participation in dance team violated Title IX. (Martens Decl. Ex. A.) OCR disagreed, finding that Minnesota's history of girls' underrepresentation in interscholastic athletics provided sufficient basis for a girls-only team. (Martens Decl. Ex. C.) OCR also noted Minnesota law's justification for girls-only teams quoted above: "it is not an unfair discriminatory practice to restrict membership on an athletic team to participants of one sex whose overall athletic opportunities have previously been limited." Minn. Stat. § 121A.04, subd. 3(a).

After finding that athletic opportunities for girls in Minnesota are more limited than for boys, OCR ultimately determined that Title IX allowed the League to maintain dance teams as girls only, because "Title IX . . . allow[s the League] to restrict teams to one

gender so long as overall athletic opportunities for that gender have been limited." (Martens Decl. Ex. C. at 8.) OCR thus dismissed the complaint.

Plaintiffs contend that, even if dance team is a sport, it is not "based upon competitive skill" and thus Title IX's exception does not apply. As an example, Plaintiffs point to baseball and softball, which require skills that differ based on sex.

The Court has determined that dance team is a sport, with extensive rules that speak to the competitive skill of the teams. And dance team participants are chosen based on athletic ability. (Martens Decl. Ex. D.) But even if the "competitive skill" exception in Title IX does not apply, Plaintiffs have not demonstrated that they are likely to succeed on the merits of their Title IX claims. The natural corollary of the last line of the exception—providing that, when athletic opportunities for one sex have been limited, individuals of that sex must be allowed to try out for opposite-sex, non-contact sports—is that schools are allowed to maintain single-sex sports for the underrepresented sex. This is precisely what Minnesota law provides and what the MSHSL has done. Title IX does not prohibit girls-only athletic teams such as dance teams.

**B.    Irreparable Harm**

Plaintiffs' next friends' affidavits have set forth the harm they are suffering from not being allowed to be on their respective school's dance team. (Docket Nos. 14, 15.) And precedent indicates, albeit usually in the context of elimination or other differential treatment of women's teams, that the deprivation of an opportunity to play one's chosen sport constitutes irreparable harm. E.g., Portz v. St. Cloud State Univ., 196 F. Supp. 3d

963, 972 (D. Minn. 2016) (Tunheim, C.J.); McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 302 n.25 (2d Cir. 2004).

The League contends that Plaintiffs will not be harmed because the status quo will remain in place, and Plaintiffs can participate in a different sport or any other non-sport extracurricular activity they choose. But as noted, the weight of authority holds that those in Plaintiffs' position are suffering irreparable harm. Plaintiffs have sufficiently demonstrated irreparable harm here.

**C.     Public Interest and Balance of Equities**

The public interest is evidenced in the Minnesota statute allowing girls-only teams that do not violate Title IX or the Equal Protection Clause. Having found that the girls-only dance-team rule does not violate either the statute or the Constitution, the public interest therefore lies in denying the injunction.

The harm to the MSHSL if the injunction issues is extensive, if not irreparable. An injunction would undoubtedly throw the imminent dance-team season into disarray. And the MSHSL is caught in a difficult situation, where to acquiesce to Plaintiffs' demands could result in the MSHSL falling out of compliance with its obligations under Title IX. These harms warrant serious consideration.

But even where the balance of hardships "tips decidedly toward plaintiff" a preliminary injunction should issue only if the plaintiff "has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase, 640 F.2d at 113. Here, although the balance of harms may favor Plaintiffs, they have not raised serious questions

as to the merits of their claims, nor does the public interest support the injunction they seek. A preliminary injunction is therefore properly denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Plaintiffs' Motion for a Preliminary Injunction (Docket No. 11) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 27, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge